FILED

MAR 0 2 2010

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

TONY KOVACEVIC,

          Plaintiff,

                                    CV-05-512-PK

                                    FINDINGS AND
v.                                    RECOMMENDATION

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

          Defendant.

_____

PAPAK, Magistrate Judge:

       Plaintiff Tony Kovacevic filed this action against defendant Commissioner of the Social

Security Administration on April 13, 2005. Kovacevic sought review of the Commissioner's

decision finding him not disabled for purposes of entitlement to Disability Insurance Benefits

("DIB") and Supplemental Security Income ("SSI") benefits. On August 21, 2006, I

recommended that the Commissioner's decision be reversed and the action remanded to the

Social Security Administration for calculation and award of DIB and SSI benefits. On

September 11, 2006, Judge King adopted my recommendation without modification. Kovacevic

moved for an award of attorney fees pursuant to the Equal Access to Justice Act (the "EAJA"),

and on October 2, 2006, I granted the motion and entered an award of attorney fees in

Kovacevic's favor in the amount of $4,400.00. Kovacevic's counsel was subsequently awarded

an additional $8,002.07 in attorney fees for work performed before the Social Security Administration.

Now before the court is Kovacevic's unopposed motion (#27) for approval of payment to his counsel out of his retroactive benefits award the amount of $3,317.28[1] (calculated by subtracting $12,402.07, the total amount of the fee awards Kovacevic's counsel has already received, from $15,719.35, or 25% of the $62,877.40 in retroactive Social Security benefits that Kovacevic's counsel now asserts that Kovacevic was awarded). I have considered the parties' briefs and all of the evidence in the record. For the reasons set forth below, Kovacevic's motion should be granted, and payment to Kovacevic's counsel of $3,317.28 out of Kovacevic's past-due benefits award should be approved.

## ANALYSIS

Pursuant to 42 U.S.C. § 406(b), Kovacevic moves for approval of payment of attorney fees to his counsel in an amount equal to 25% of his retroactive DIB and SSI award, less amounts he has already received as compensation for his services. Section 406(b) provides, in relevant part, as follows:

> Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment. . . .

---

[1] Kovacevic's counsel actually requests an award of $7,717.28, or $15,719.35 less the $8002.07 already received for work performed before the Administration, from which amount he represents that he will reimburse his client $4,400, or the amount of the EAJA fee already received for work performed before this court. However, as discussed below, it is appropriate to deduct the EAJA fee from the Section 406(b) award before calculating the net fee due, rather than after.

42 U.S.C. § 406(b)(1)(A).  By contrast with fees awarded pursuant to the EAJA, a fee-shifting statute, Section 406(b) fees are paid out of the retroactive benefits awarded to the successful Social Security claimant.  *See id.*  Counsel representing Social Security claimants may not seek compensation from their clients for trial litigation other than through a Section 406(b) fee.  *See id.*  In the event that both an EAJA fee is awarded and a Section 406(b) fee payment is approved, the claimant's counsel must refund to the claimant the amount of the smaller of the two payments.  *See Gisbrecht v. Barnhart*, 535 U.S. 789, 796 (2002).  Any Section 406(b) fee must be approved by the court following analysis of its reasonableness before it may be paid.  *See* 42 U.S.C. § 406(b)(1)(A).

In *Gisbrecht*, the Supreme Court established that the reasonableness of a 406(b) contingency fee is not to be determined primarily by reference to the lodestar method which governs fee-shifting disputes.  *See Gisbrecht*, 535 U.S. at 801-802.  Instead, to the extent contingency fee agreements do not provide for fees exceeding 25% of claimants' retroactive benefits, their terms are fully enforceable subject only to the court's review "to assure that they yield reasonable results in particular cases."  *Id.* at 807.  It is the claimant's counsel's burden to establish the reasonableness of the calculated fee.  *See id.*

In assessing the reasonableness of a Section 406(b) fee, courts look first to the contingency fee agreement itself, and then may reduce the resulting award "based on the character of the representation and the results the representative achieved."  *Id.* at 808.  The *Gisbrecht* court provided, as examples of circumstances that could justify a downward reduction, situations in which the attorney was responsible for delay or in which "the benefits are large in comparison to the amount of time counsel spent on the case."  *Id.*  The court specified that "the

court may require the claimant's attorney to submit, not as a basis for satellite litigation, but as an

aid to the court's assessment of the reasonableness of the fee yielded by the fee agreement, a

record of the hours spent representing the claimant and a statement of the lawyer's normal hourly

billing charge for noncontingent-fee cases." *Id., citing Rodriquez v. Bowen*, 865 F.2d 739, 741

(6th Cir. 1989) (*en banc*).

The Ninth Circuit recently issued an *en banc* decision, *Crawford v. Astrue*, 586 F.3d 1142

(9th Cir. 2009), addressing the Section 406(b) reasonableness analysis under *Gisbrecht*. The

*Crawford* court reviewed the consolidated appeals of three different actions in which district

courts reduced Section 406(b) fees from the amounts requested. In the first of these, claimant

Clara Crawford was represented by attorney Brian Shapiro. *See Crawford*, 586 F.3d at 1144.

The Administration initially denied Crawford's application for benefits, but following litigation,

ultimately awarded her $123,891.20 in past-due benefits. *See id.* at 1145. Although Shapiro and

Crawford had entered into a contingency fee agreement that provided for a 25% contingency fee,

Shapiro requested a fee of only $21,000, or 16.95% of Crawford's retroactive benefits,

representing an amount 3.55 times the amount that would have resulted from a lodestar

calculation. *See id.* The district court found no evidence of fraud or over-reaching in the

negotiation of the fee agreement, that Shapiro had caused no unnecessary delay, and that

Shapiro's lodestar calculations were correct. *See id.* However, the district court found that

Shapiro had not met his burden to show that the requested "enhancement" of the lodestar figure

was reasonable, because he had not presented evidence of his own firm's success rate in

representing Social Security claimants (as opposed to data regarding the success rate of Social

Security claimants generally) and because Crawford's attorneys' skill and experience were already

reflected in the lodestar figure. *See id.* The court ruled, without explanation, that a 40%

"enhancement" over the lodestar figure was reasonable, and on that basis awarded a fee of

$8,270.00, the equivalent of 6.68% of Crawford's retroactive benefits. *See id.*

In the second action of the consolidated appeal, claimant Ruby Washington was

represented by attorney Young Cho. *See id.* at 1144. As in Crawford's case, the Administration

initially denied Washington's application for benefits, but following litigation, awarded

$76,041.00 in retroactive benefits. *See id.* Although Cho and Washington had entered into a

contingency fee agreement that provided for a 25% contingency fee, Cho requested a fee of only

$11,500, or 15.12% of Washington's retroactive benefits, representing an amount 1.82 times the

amount that would have resulted from a lodestar calculation. *See id.* The district court found no

evidence of fraud or over-reaching in the negotiation of the fee agreement, that Cho had caused

no unnecessary delay, and that Cho's lodestar calculations were correct. *See id.* at 1146.

However, as for Crawford, the district court found that Cho had not met his burden to show that

the requested "enhancement" of the lodestar figure was reasonable, because he had not presented

evidence of his own firm's success rate in representing Social Security claimants, because

Washington's attorneys' skill and experience were already reflected in the lodestar figure, and

because Cho had not been required to do much work to obtain benefits on Washington's behalf.

*See id.* The court ruled, without explanation, that a 40% "enhancement" over the lodestar figure

was reasonable, and on that basis awarded a fee of $8,825.53, the equivalent of 11.61% of

Washington's retroactive benefits. *See id.*

In the third action of the consolidated appeal, claimant Daphne M. Trejo was represented

by attorney Denise Bourgeois Haley. *See id.* at 1144. As in Crawford's and Washington's cases,

Page 5 - FINDINGS AND RECOMMENDATION

the Administration initially denied Trejo's application for benefits, but following litigation,

awarded $172,223.00 in retroactive benefits. *See id.* at 1146. Although Haley and Trejo had

entered into a contingency fee agreement that provided for a 25% contingency fee, Haley

requested a fee of only $24,000, or 13.94% of Washington's retroactive benefits, representing an

amount 2.79 times the amount that would have resulted from a lodestar calculation. *See id.* The

district court found no evidence of fraud or over-reaching in the negotiation of the fee agreement,

that Haley had caused no unnecessary delay and that her representation had been excellent, and

that Haley's lodestar calculations were correct, except that 1.5 hours of claimed paralegal time

and 1.4 hours of claimed attorney time had been improperly attributed to the federal action. *See

id.* However, as for Crawford and Washington, the district court found that Haley had not met

her burden to show that the requested fee was reasonable, because she had not presented

evidence of her own firm's success rate in representing Social Security claimants, because Trejo's

attorneys' skill and experience were already reflected in the lodestar figure, and because Haley

had not presented evidence that Haley's firm had been precluded from accepting other work in

consequence of Haley's representation of Trejo. *See id.* The court ruled, without explanation,

that a 100% "enhancement" over the lodestar figure was reasonable, and on that basis awarded a

fee of $12,650.40, the equivalent of 7.35% of Trejo's retroactive benefits. *See id.*

The *Crawford* majority characterized the district courts' decisions as impermissibly

beginning with the lodestar calculation and determining a reasonable fee award by applying

enhancements to the lodestar figure, rather than by beginning with the claimants' fee agreements

and applying any appropriate reductions to the calculated contingency fees to arrive at reasonable

fees. *See id.* at 1150. In addition, the *Crawford* majority found no evidence of substandard

performance or dilatory conduct by the claimants' attorneys, and that the requested fees were not "excessively large in relation to the benefits achieved." *See id.* at 1151. On the basis of these findings, the *Crawford* majority found that the requested fees – each of which was less than the fee provided for in the applicable contingency fee agreement – were reasonable in each case, and therefore reversed each district court's decision with instructions to award the requested fees. *See id.* at 1151-1152.

As a separate and independently adequate ground for vacating the orders below, the *Crawford* court further noted the district courts' failure to explain the bases for the percentages they found to constitute reasonable enhancements of the lodestar figure in each case. *See id.* at 1152. The *Crawford* court also flatly rejected the district courts' reliance on the attorneys' failure to provide firm-specific historical success rates as a basis for reducing the requested fee awards, and suggested that the reasonableness of a fee award could be measured in part by reference to the risk counsel assumed by agreeing to take on a particular case, given the specific facts of that case. *See id.* at 1152-1153.

Here, the Administration initially rejected Kovacevic's application for DIB and SSI benefits, only to award retroactive benefits following litigation. Kovacevic's counsel now asserts, without supporting evidence, that those retroactive benefits were awarded in the total amount of $62,877.40.[2] As in the cases reviewed by the *Crawford* and *Gisbrecht* courts, Kovacevic entered into a contingency fee agreement with his counsel providing for payment of

---

[2] Although as a rule I do not accept a legal representative's unsworn and unsupported assertions as true, the record before me provides no suggestion that counsel's assertion is inaccurate, and for purposes of this opinion I assume that Kovacevic received a retroactive benefits award of $62,877.40.

Page 7 - FINDINGS AND RECOMMENDATION

25% of Kovacevic's retroactive benefits to his attorney.[3]  It therefore now falls to me to assess

whether $15,719.35, or 25% of the retroactive benefits award, constitutes reasonable

compensation for Kovacevic's counsel under the various factors discussed in *Gisbrecht* and

*Crawford.*

A.    **Character of the Representation**

1.    **Quality of Attorney Performance**

As *Gisbrecht* and *Crawford* both make clear, substandard performance by a legal

representative warrants a reduction in a Section 406(b) fee award.  *See Gisbrecht*, 535 U.S. at

808; *Crawford*, 586 F.3d at 1151.  Here, the evidentiary record does not suggest that Kovacevic's

counsel's performance was in any way substandard.  No reduction in the Section 406(b) fee is

warranted due to the character of the representation here.

2.    **Dilatoriness**

A Section 406(b) award may properly be reduced if any delay in proceedings is properly

attributable to the claimant's counsel.  *See Gisbrecht*, 535 U.S. at 808; *Crawford*, 586 F.3d at

1151.  Here, the record does not suggest that Kovacevic's counsel was responsible for any delay

of these proceedings.  No reduction in the Section 406(b) fee is warranted on the basis of dilatory

performance.

B.    **Proportionality of Benefits Awarded to Attorney Time Spent**

The *Gisbrecht* and *Crawford* courts both held that a Section 406(b) award could be

reduced if the benefits awarded to the Social Security claimant were out of proportion to the time

---

[3]  Although Kovacevic's counsel elected not to offer a copy of the contingency fee
agreement in support of his motion for approval of Section 406(b) fees, a copy of the agreement
may be found in the Administrative Record at AR 44.

spent by the claimant's attorney. *See Gisbrecht*, 535 U.S. at 808; *Crawford*, 586 F.3d at 1151.

Although neither court's opinion provides significant guidance as to how to measure such

disproportionality, *Gisbrecht* established, *see* 535 U.S. at 808, and *Crawford* affirmed, *see* 586

F.3d at 1151, that records of attorney time expended and a statement of the attorney's normal

hourly fee in non-contingent matters could be considered in this connection, but only as an "aid"

in assessing the reasonableness of the award provided in the contingency fee agreement.

  Considered in isolation, the product of the lodestar calculation can at best be of extremely

limited utility in assessing the reasonableness of a contingency fee. The lodestar method of

calculating fees is designed for use where it is intended that an attorney be compensated strictly

for time expended and not on the basis of results achieved, milestones reached, or any of the

myriad other bases by which clients may permissibly compensate their legal representatives, and

where the probability of nonpayment is both low and unrelated to the attorney's ultimate success

or failure. By contrast, the method authorized under Section 406(b) is one designed to

compensate attorneys commensurately with results achieved. As a matter of logic, the fact

(standing alone) that a fee calculated according to the lodestar method differs from a fee

calculated according to a contingency fee agreement is uninformative as to whether the

contingency fee might be disproportionate.

  Approaching the question from first principles, it is clear that the disproportionality

analysis can have nothing to do with the absolute amount of the Section 406(b) fee requested,

since that fee is always a maximum of 25% of the retroactive benefits award, and must

necessarily address primarily the effective requested hourly rate that may be back-derived by

dividing the putative contingency award by the number of hours spent in pursuing it. Although

that effective requested hourly rate cannot usefully be directly compared to a reasonable hourly fee to determine its proportionality, it is logically defensible to posit, at least in the abstract, that an effective requested hourly rate is not disproportionately high if it is less than or equal to the product of a reasonable hourly rate for non-contingent matters and the reciprocal of the pre-litigation probability that litigation would lead to a favorable result, based on the particular facts presented in a given case.[4] That is, an effective requested hourly rate cannot be disproportionately high if it does not overcompensate an attorney for the risk that attorney assumed at the time the representation was undertaken that the attorney would ultimately receive no compensation for his or her services. An attorney is not overcompensated for such risk if the pre-litigation expected value of the representation – the probability of a favorable result times the compensation that would be received in the event of a favorable result – does not exceed the product of the appropriate hourly rate and the expected number of hours required.

In addition to giving cognizable effect to the *Gisbrecht* court's suggestion that an attorney's normal hourly rate could bear materially on the disproportionality analysis and the *Crawford* court's suggestion that case-specific risk could be a material factor in assessing the reasonableness of a Section 406(b) fee, measuring the relationship between a reasonable hourly fee for non-contingent matters and the effective requested hourly rate by reference to the case-specific risk of an unfavorable result has the benefit of suggesting a potentially useful metric for assessing proportionality:  a contingency fee award is disproportionately high where it

---

[4] Thus, if $100 is a reasonable hourly rate of compensation for non-contingent matters, an effective requested hourly rate would not be disproportionate in light of the risk a particular contingency matter presented if, *e.g.*, the effective requested hourly rate did not exceed $400 where the probability of a favorable outcome was 25%, or one in four.

disproportionately overcompensates for the pre-litigation risk of an unfavorable result. Necessarily, however, this metric leaves at least two open questions: how is pre-litigation risk to be determined? By what proportion may an award overcompensate risk without becoming disproportionate?

Despite these unanswered questions, I conclude that the proposed metric is of at least potential utility in assessing the reasonableness of Section 406(b) fee awards under the current state of applicable case law. As the *Gisbrecht* court noted, the "district courts are accustomed to making reasonableness determinations in a wide variety of contexts," 535 U.S. at 808, and widespread adoption of the metric would permit the development of benchmark values for determining the proportionality of risk mitigation. I therefore assess the proportionality of the fee requested in this action to the time expended in litigation by reference to the metric outlined herein.[5]

Kovacevic's counsel asserts to the court – without supporting evidence of any kind – that he expended 29.2 hours in connection with litigating Kovacevic's application for DIB and SSI benefits.[6] To give effect to the contingency fee arrangement in place between Kovacevic and his

------

[5] Kovacevic's counsel argues in favor of a different metric for determining proportionality. Specifically, Kovacevic's counsel relies on statistics of dubious provenance, at least one indefensible premise, and a patent mathematical solipsism to conclude that an effective hourly rate of $756.16 would be necessarily reasonable. However, because his analysis establishes only that, on certain unproven assumptions, compensation at a rate of $756.16 might bring his average compensation (including compensation in other cases not here at issue) into line with other Portland-area practitioners' average compensation, without regard to whether compensation at such a rate could be reasonable in this case, I reject his proposed methodology in its entirety.

[6] The evidentiary record provides no suggestion that counsel's assertion is inaccurate. For purposes of this opinion I assume that Kovacevic's counsel worked 29.2 hours in connection with this action.

Page 11 - FINDINGS AND RECOMMENDATION

counsel would thus yield an effective hourly rate of $538.33 (25% of $62,844.40 is $15,719.35; the quotient of $15,719.35 and 29.2 hours is $538.33 per hour).[7]

Kovacevic's counsel does not advise the court as to his normal hourly rate, if any, for non-contingent matters, but he does assert that the Oregon State Bar 2002 Economic Survey reported a "proper" rate of $206 per hour for Portland-area attorneys practicing in "other" areas of private practice. He further asserts that this amount, adjusted for inflation, is "in excess of $240 per hour." I take judicial notice that the Oregon State Bar Economic Surveys provide information as to rates prevalent in various Oregon legal communities in the years in which survey data are collected. I further take judicial notice that the Oregon State Bar 2007 Economic Survey provides information as to rates actually charged by Oregon attorneys in 2006. According to the 2007 Economic Survey, the median hourly rate charged by Portland-area attorneys practicing in "other" areas of private practice in 2006 was $222. Virtually all litigation activity before this court took place in 2005 or 2006. Kovacevic's counsel offers no evidence as to the years in which his reported 29.2 hours were expended. In the absence of information on this point, I conclude that the appropriate "normal" hourly rate to use for benchmark comparison purposes is $222, without adjustment for inflation. Using $222 as the benchmark normal hourly rate, the effective requested hourly rate of $538.33 is the equivalent of 2.42 times the reasonable hourly

---

[7] Kovacevic's counsel asserts that the requested fee would compensate him at an effective hourly rate of $264.29, calculated by subtracting $8,002.07, one of the two fee awards already received by counsel, from the $15,719.35 total fee provided in the contingency fee agreement, and dividing that difference by 29.2 hours. Counsel's assertion reflects a basic conceptual error: the relevant effective hourly rate is the one that takes into account all compensation requested, not one that reflects only a portion of the compensation requested. $264.29 constitutes the difference between the effective hourly rate counsel now requests and the effective hourly rate already awarded by the Administration.

Page 12 - FINDINGS AND RECOMMENDATION

rate for non-contingent matters. The reciprocal of 2.42 is 0.41; thus, the requested fee award would be clearly proportionate to the time spent if the pre-litigation risk of an adverse result was assessible at not less than 59%.

Ideally, a 406(b) fee petitioner would provide in support of his or her petition, in addition to evidence of the total retroactive benefits award, a contemporaneously prepared record of time expended, and a statement of the attorney's normal hourly fee in non-contingent matters, some form of statement of the attorney's pre-litigation assessment of the risk the attorney undertook in agreeing to represent the Social Security claimant that an unfavorable result would occur, resulting in no compensation for the attorney's services. Here, I have no information as to Kovacevic's counsel's pre-litigation assessment of the risk presented by Kovacevic's Social Security claim. From my own perspective as the judge to whom Kovacevic's request for judicial review was presented, I would rate Kovacevic's claim as significantly less risky than the average Social Security claim. However, because every legal action necessarily carries a degree of risk, and because every Social Security claimant faces a difficult burden in overcoming the deference to which an Administrative Law Judge's decision is entitled, I would estimate the risk of an unfavorable outcome that Kovacevic's counsel undertook at the time he agreed to represent his client as potentially as high as 40%.

Using 40% as the pre-litigation risk of an unfavorable result, I conclude that compensation at an effective hourly rate of $538.33 would overcompensate Kovacevic's counsel for the risk Kovacevic's Social Security claim represented. However, it is relatively easy for me further to conclude that compensation at such a rate would not *disproportionately* overcompensate for the risk presented. Risk assessment is a chancy and subjective business, and

Page 13 - FINDINGS AND RECOMMENDATION

it is clear to me that overcompensating for risk by a factor of approximately 45%, as I find to be the case here, does not constitute disproportionate overcompensation. I therefore conclude that reduction is not warranted in connection with the proportionality factor, taking into account the case-specific risks and the appropriate normal hourly rate for non-contingent matters.

### C.      Appropriate Fee

For the foregoing reasons, I find that the contingency fee agreement in place between Kovacevic and his counsel is within the statutory limits provided in 29 U.S.C. § 406(b), and that the fee provided therein is reasonable. Kovacevic's motion for approval of Section 406(b) fees should be granted, and Kovacevic's counsel should be permitted to retain as a reasonable attorney's fee the total amount of $3,317.28 ($62,877.40 * 0.25 - $4,400 - $8,002.07) from the gross amount of Kovacevic's retroactive benefits award of $62,877.40.

## CONCLUSION

For the reasons set forth above, Kovacevic's motion (#27) should be granted, and payment to Kovacevic's counsel of $3,317.28 out of Kovacevic's retroactive benefits award should be approved.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a

/ / /

/ / /

Page 14 - FINDINGS AND RECOMMENDATION

copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.


Dated this 2nd day of March, 2010.

Honorable Paul Papak
United States Magistrate Judge